UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WILLIAM THOMAS,

                Plaintiff,

        -against-

JOHN MORLEY, et al.,

                Defendants.

**MEMORANDUM OPINION
AND ORDER**

20-CV-07520 (PMH)

PHILIP M. HALPERN, United States District Judge:

      William Thomas ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, alleges in the Amended Complaint—the operative pleading in this action—that between July 5, 2018 and December 10, 2019, fifteen employees of the New York State Department of Corrections and Community Supervision ("DOCCS") and two employees of Westchester Medical Center ("WMC") violated his constitutional rights during his incarceration at Green Haven Correctional Facility in Stormville, New York ("Green Haven"). (Doc. 5, "Am. Compl.").[1] The fifteen DOCCS employees are: (1) John Morley ("Morley"); (2) Susanna Nayshuler ("Nayshuler"); (3) Colleen Quackenbush ("Quackenbush"); (4) Tracey Blatney ("Blatney"); (5) Vernon Baldwin ("Baldwin"); (6) Robert V. Bentivegna ("Bentivegna"); (7) Dora Barrito ("Barrito"); (8) Medbury; (9) Toll; (10) Griffen; (11) Morales; (12) Carbello; (13) Quarche; (14) Edge; and (15) Russo (collectively, "State Defendants"). (*Id*. at 2, 5-8). The two WMC employees named in the Amended Complaint are Harvey Lewit ("Lewit") and Fullerton (collectively, with the State Defendants, "Defendants"). (*See id*. at 2, 7-8).

---

[1] Citations to Plaintiff's filings correspond to the pagination generated by ECF. Judge Stanton—before whom this matter proceeded previously—evaluated the Complaint and, in an Order docketed on October 22, 2020, *sua sponte* granted Plaintiff leave to file an amended pleading. (Doc. 4).

Lewit filed a motion to dismiss the Amended Complaint under Federal Rule of Civil Procedure 12(b)(6), which included a declaration with exhibits, on June 25, 2021. (Doc. 32; Doc. 33, "Gil Decl."; Doc. 34, "Lewit Br.").[2] Plaintiff filed his four-page opposition to Lewit's motion to dismiss on July 8, 2021 (Doc. 36, "Lewit Opp."), and that motion was briefed fully with the filing of Lewit's reply memorandum of law in further support of his motion to dismiss on August 6, 2021 (Doc. 39, "Lewit Reply").

The State Defendants, represented separately by the New York State Office of the Attorney General, filed a motion to dismiss the Amended Complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on December 20, 2021. (Doc. 52; Doc. 53, "State Def. Br."). Plaintiff's opposition papers were due no later than January 17, 2022. (Doc. 51). Plaintiff has not, to date, filed a response to the State Defendants' motion.[3]

For the reasons set forth below, Defendants' motions are GRANTED.[4]

---

[2] On a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014). Still, "[w]here an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) (internal quotation marks omitted). Here, Lewit filed a declaration with four exhibits annexed thereto for the Court's consideration. (*See* Gil Decl.). Of those documents, the Court considers only the letter Plaintiff sent in response to Lewit's pre-motion conference request on or about May 4, 2020. (Doc. 33-4, "Gil Decl. Ex. D"). The Court considers that document at this juncture because Plaintiff filed a copy of that correspondence directly to the docket. (*Compare* Gil Decl. Ex. D, *with* Doc. 26); *see also Castagna v. Luceno*, No. 09-CV-09332, 2011 WL 1584593, at *5 (S.D.N.Y. Apr. 26, 2011) (taking judicial notice of pre-motion conference correspondence on a motion to dismiss), *aff'd*, 744 F.3d 254 (2d Cir. 2014).

[3] The Order setting the briefing schedule for the State Defendants' motion was mailed to Plaintiff at the address he provided to the Court on November 17, 2021. (Nov. 17, 2021 Entry). Not having received any opposition papers from Plaintiff, the State Defendants, on January 31, 2022, requested that the Court dismiss this action for failure to prosecute or deem their motion fully submitted. (Doc. 54).

[4] There is no indication that Fullerton has been served. Nevertheless, the Court considers the viability of federal claims for relief against him as well by operation of 28 U.S.C. § 1915(e)(2)(B). *See Williams v. Novoa*, No. 19-CV-11545, 2022 WL 161479, at *10-12 (S.D.N.Y. Jan. 18, 2022).

## BACKGROUND

Plaintiff was housed at Green Haven during the operative timeframe. (Am. Compl. at 9).

I.  2018 Events

When Plaintiff first arrived at Green Haven on July 5, 2018, he was suffering from an unspecified "chronic kidney disease." (*Id*.). After his arrival, at some point in August 2018, somebody removed Plaintiff's nephrostomy[5] tube. (*Id*.). Plaintiff believed, based on a prior visit to WMC in June 2018, that he would also receive some type of reconstructive surgery. (*Id*.). The Court presumes that this unspecified surgery was never performed. (*See generally id*.).

By September 2018—approximately two months after being transferred to Green Haven— Plaintiff had "filed numerous" grievances and written DOCCS' "main medical offices." (*Id*.). Plaintiff provides no information about the content of these grievances or messages, although it seems they concerned Plaintiff's medical care. (*See id*. at 9-10). Plaintiff alleges that after "conduct[ing] a bogus investigation," Morley, Nayshuler, Quackenbush, and Blatney determined erroneously that "Green Haven medical staff are providing [Plaintiff with] adequate medical care." (*Id*. at 10). Plaintiff insists that:

> [t]his went on from Sept. 2018 until Nov. 2019. Plaintiff had to deal
> with severe pain, trouble urinating, and other symptoms.

(*Id*.).[6] Plaintiff claims that he has "exhausted all administrative remedies" available to him since September 2018. (*Id*. at 13).

Beginning at the end of the year—specifically from December 2018 until February 2019— Plaintiff was on suicide watch. (*Id*.). On unspecified occasions during this period, Toll did not

---

[5] "Nephrosis" is defined as a "[d]isease of the kidney, especially one characterized by degenerative lesions of the renal tubules." *Nephrosis*, Funk & Wagnalls Standard College Dictionary (1973).

[6] Plaintiff does not identify the antecedent to the pronoun "this." (*See* Am. Compl. at 10).

feed Plaintiff, sprayed Plaintiff with a fire extinguisher, and "called Plaintiff [a] baby rapist, nigger, piece of shit, and many other names." (*Id*.).[7] Plaintiff alleges that because Toll was "known for working 16 hrs, five days a week . . . Plaintiff would not be afforded meals for days." (*Id*. at 14).

II.   2019 Events

Plaintiff represents that he was supposed to be released from incarceration in January 2019 but that, somehow, for unstated reasons, Medbury, Griffen, and Morales "forced Plaintiff to sign" a residential treatment facility agreement that prevented his timely release from incarceration. (*Id*. at 14). At some point, Plaintiff complained to Medbury that "Griffen was going to set him up" and that Griffen had gotten Plaintiff removed from a program at "Shawangunk . . . years earlier." (*Id*.).

At some point the following month, February 2019, Plaintiff says somebody heard Toll, Quarche, and Carbello "discussing Plaintiff's criminal charge and mental state." (*Id*. at 13-14).

Approximately six months later, on August 6, 2019, Plaintiff had a stent removed by an unidentified individual and spoke with Fullerton about his "symptoms." (*Id*. at 11). Fullerton "dismissed" Plaintiff's concerns and determined that "Plaintiff would be alright going back to" Green Haven. (*Id*.).

Upon his return to Green Haven, Plaintiff "complain[ed] to every R.N. at the facility." (*Id*.). During the evening of August 8, 2019, Barrito and Edge confronted Plaintiff in his room; Edge ordered Plaintiff to "stop pressing the fuckin' call button" and "told Plaintiff that nothing was wrong with him." (*Id*. at 11-12). During this interaction, Edge grabbed Plaintiff by the shirt, slapped him, and called him "a fuckin' baby rapist." (*Id*. at 12).

The next day, August 9, 2019, Plaintiff was taken to the WMC emergency room for "a urinary tract infection." (*Id*. at 11). Lewit was the attending physician at WMC that day. (*Id*.).

---

[7] Plaintiff pled that Toll "sprayed [him] with [a] fire hydrate numerous times." (Am. Compl. at 13). The Court presumes that Plaintiff intended to plead that Toll sprayed him with a fire extinguisher.

Plaintiff insists that Lewit, at Fullerton's direction, discharged Plaintiff "even though Plaintiff had a severe urinary tract infection." (*Id.*). At some point the following month, September 2019, Plaintiff was moved—over his written protest to Russo—to the involuntary protective custody unit at Green Haven. (*Id.* at 15).

Throughout Plaintiff's pleading, he also maintains generally that he: (1) submitted "numerous grievances and complaints" to Bentivegna and Baldwin, one of which raised a statement by somebody that "medical was . . . aware of Plaintiff's . . . abnormal levels;" and (2) "wrote complaints to . . . Fullerton which stated how Plaintiff was being treated by Green Haven medical staff." (*Id.* at 12-13).

This litigation followed.

## STANDARD OF REVIEW

I.    Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action 'when the district court lacks the statutory or constitutional power to adjudicate it.'" *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exists." *Hettler v. Entergy Enters., Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (citing *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009)). When deciding a Rule 12(b)(1) motion, "the Court 'must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Id.* (quoting *Conyers*, 558 F.3d at 143); *see also Doe v. Trump Corp.*, 385 F. Supp. 3d 265, 274 (S.D.N.Y. 2019).

When a defendant seeks dismissal under Rule 12(b)(1) "as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for

lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.   Federal Rule of Civil Procedure 12(b)(6)

A Rule 12(b)(6) motion enables a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556). The factual allegations pled "must be enough to raise a right to relief above the speculative level . . . ." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "take all well-ple[d] factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556

U.S. at 678 (alteration in original)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

Moreover, when deciding an unopposed motion to dismiss (as is the case here with respect to the State Defendants' motion), "the Court is to 'assume the truth of a pleading's factual allegations and test only its legal sufficiency. Thus, although a party is of course to be given a reasonable opportunity to respond to an opponent's motion, the sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law.'" *Law v. Corizon Med. Servs.*, No. 13-CV-05286, 2014 WL 2111675, at *3 (S.D.N.Y. May 12, 2014) (quoting *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)). It is, therefore, appropriate for the Court to test the sufficiency of the Amended Complaint even without the benefit of formal opposition to the motion.

## ANALYSIS

I. Rule 12(b)(1): Lack of Subject-Matter Jurisdiction

The Court, as guided by precedent, turns first to the State Defendants' arguments regarding the lack of subject-matter jurisdiction and dismissal mandated under Rule 12(b)(1).

### A. The State Defendants' Eleventh Amendment Immunity

Insofar as Plaintiff seeks relief under 42 U.S.C. § 1983, the Eleventh Amendment directs that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This language bars suits, even those arising under federal law, against a state by one of its own citizens. *Woods v. Rondout Valley Centr. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (citing *Hans v. Louisiana*, 134 U.S. 1, 15 (1890)). "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity when acting pursuant to its authority under Section 5

of the Fourteenth Amendment." *Nelkenbaum v. Jordy*, No. 19-CV-07953, 2020 WL 7630354, at

*2 (S.D.N.Y. Dec. 22, 2020) (quoting *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009)

(alteration in original)). To that point, it is well-settled that "New York has not waived its sovereign

immunity in § 1983 lawsuits, nor has Congress abrogated the State's immunity." *Phillips v. New

York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v.

Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412,

424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section

1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the

[Eleventh] Amendment.").

Consequently, because the Eleventh Amendment deprives the Court of subject-matter

jurisdiction and neither exception applies, the claims for relief under 42 U.S.C. § 1983 are

dismissed under Rule 12(b)(1) to the extent they seek relief against the State Defendants in their

official capacities. This result does not affect the 42 U.S.C. § 1983 claims against the State

Defendants in their individual capacities, which the Court considers *infra*.

II.   Rule 12(b)(6): Failure to State a Claim Upon Which Relief Can Be Granted

Plaintiff's claims for relief proceed under 42 U.S.C. § 1983. That statute provides, in

pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be

subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." 42

U.S.C. § 1983. "[T]his language . . . creates a mechanism by which individuals can vindicate the

violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736,

at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337,

at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The alleged violations here stem principally from the Eighth and Fourteenth Amendments. (*See generally* Am. Compl. at 9-15).

      A.  <u>Prerequisite of Personal Involvement</u>

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Simply being a supervisor is not enough to impute personal involvement onto a defendant; liability exists only where the "defendant, through the official's own individual actions, has violated the Constitution." *Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). The Amended Complaint fails to implicate seven of the State Defendants in any alleged constitutional violation, namely: (1) Bentivegna; (2) Baldwin; (3) Russo; (4) Morley; (5) Nayshuler; (6) Quackenbush; and (7) Blatney.

With respect to Bentivegna and Baldwin, Plaintiff alleges merely that he sent them "numerous grievances and complaints" about his medical care during his incarceration. (Am. Compl. at 12). As for Russo, Plaintiff says he complained to Russo about being moved to an involuntary protective custody unit at Green Haven. (*Id.* at 15). These two sentences recount the entirety of Bentivegna, Baldwin, and Russo's roles in the pleading and do not establish the personal involvement necessary to state a claim for relief against them under 42 U.S.C. § 1983. *See, e.g.*, *Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (commissioner's receipt of letters from an inmate insufficient to establish personal involvement); *McIntosh v. United States*, No. 14-CV-07889, 2016 WL 1274585, at *16 (S.D.N.Y. Mar. 31, 2016) ("[M]ere receipt of a complaint or grievance from

an inmate is insufficient to establish personal involvement . . . ."); *Malik v. City of New York*, No. 11-CV-06062, 2012 WL 3345317, at *15 (S.D.N.Y. Aug. 15, 2012) ("The only factual basis for this allegation, however, is that Malik wrote . . . Argo . . . regarding his grievances. This allegation is insufficient to make out a *prima facie* claim of personal involvement . . . ." (internal citations omitted)), *adopted by* 2012 WL 4475156 (S.D.N.Y. Sept. 28, 2012); *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010) ("Courts in this circuit have said that the receipt of letters or grievances, by itself, does not amount to personal involvement."); *Higgins v. Artuz*, No. 94-CV-04810, 1997 WL 466505, at *7 (S.D.N.Y. Aug. 14, 1997) (Sotomayor, J.) ("[I]t is well-established that an allegation that an official ignored a prisoner's letter of protest and request for an investigation of allegations made therein is insufficient to hold that official liable for the alleged violations." (internal quotation marks omitted)).

As to Morley, Nayshuler, Quackenbush, and Blatney, Plaintiff alleged that these four individuals conducted an "investigation" and determined that he had received "adequate medical care." (*See* Am. Compl. at 9-10). Allegations involving an investigation could, on other facts, be sufficient to establish personal involvement in a constitutional violation. *See Burgess v. Gerbing*, No. 15-CV-09256, 2017 WL 2992208, at *6 (S.D.N.Y. July 13, 2017) (denying motion to dismiss defendant superintendent on basis of personal involvement where defendant "not only denied two of plaintiff's appeals, but also conducted an investigation"); *Marino v. Koenigsmann*, No. 12-CV-01170, 2014 WL 1239514, at *12 (N.D.N.Y. Mar. 25, 2014) (explaining that receiving a grievance, conducting an investigation, and communicating with an outside agency was "more than sufficient to plausibly establish that [the defendant] was personally involved" in the constitutional violation). Here, however, Plaintiff complains simply that Morley, Nayshuler, Quackenbush, and Blatney investigated unspecified complaints and concluded that Plaintiff received adequate medical

attention. (Am. Compl. at 10). Merely claiming that individuals conducted an investigation and reached a conclusion cannot, without more, implicate those individuals in a constitutional violation. *See Berman v. Durkin*, No. 13-CV-00136, 2015 WL 1481769, at *9 (N.D.N.Y. Mar. 31, 2015) (dismissing defendant from suit for want of personal involvement where the plaintiff complained only that defendant conducted an inadequate investigation); *Phelan v. Chin*, No. 10-CV-06344, 2013 WL 4495796, at *5 (W.D.N.Y. Aug. 19, 2013) ("[T]here is no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved. Plaintiff's claims . . . based upon . . . inadequate investigation . . . fail to state a colorable constitutional claim.").[8]

Any claims for relief pressed against Bentivegna, Baldwin, Russo, Morley, Nayshuler, Quackenbush, and Blatney are, accordingly, dismissed for lack of personal involvement.

### B.   Claims for Relief Under the Eighth Amendment

Plaintiff presents three factual predicates for recovery under the Eighth Amendment. First, Plaintiff complains that Lewit, Fullerton, Edge, and Barrito were deliberately indifferent to a serious medical need. Second, Plaintiff alleges that: (1) Edge used excessive force against him and Barrito failed to intervene in the use thereof; and (2) Toll harassed him with a fire extinguisher. Third, Plaintiff suggests that Toll subjected him to unconstitutional conditions of confinement by refusing to provide him with meals. (*See* Am. Compl. at 11-13).

These separate theories are addressed *seriatim*.

---

[8] Even if these allegations were sufficient to plead Morley, Nayshuler, Quackenbush, and Blatney's personal involvement, there is no underlying constitutional violation that proceeds into discovery. (*See* discussion *infra*).

i.   Theory No. 1: Deliberate Indifference to a Serious Medical Need

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020). Generally, as explained by this Court previously:

> [t]he first prong is objective and requires that the alleged deprivation in medical care be sufficiently serious. A deprivation in medical care is sufficiently serious if (1) the prisoner was actually deprived of adequate medical care and (2) the inadequacy in medical care is sufficiently serious. The latter inquiry contemplates a condition of urgency that may result in degeneration or extreme pain.
>
> . . . .
>
> The second prong of the deliberate indifference test under the Eighth Amendment is subjective and requires that the plaintiff demonstrate that the defendant had a sufficiently culpable state of mind. A defendant had a sufficiently culpable state of mind if he acted or failed to act while actually aware of a substantial risk that serious inmate harm will result.

*Id.* at *4-5 (internal citations and quotation marks omitted).

This test exists with a caveat: "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners,

13

and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara v. Pataki*, No. 06-CV-06123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").

### a.   The Objective Prong

As to the objective prong, where—as here—"a plaintiff acknowledges that he received some medical care related to the underlying condition, but that the care he received was inadequate, 'the seriousness inquiry focus[es] on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'" *Boomer v. Bentivegna*, No. 19-CV-04754, 2021 WL 1163658, at *3 (S.D.N.Y. Mar. 26, 2021) (quoting *Salahuddin*, 467 F.3d at 280). Reading the Amended Complaint liberally, and assuming that Plaintiff's medical condition was sufficiently serious, the allegations simply do not suggest plausibly that he suffered any *delay or interruption* of medical care; in fact, Plaintiff pled (and provided medical records showing) that he was treated. (*See* Am. Compl. at 11; *see also* Gil Decl. Ex. D at 4-8).[9]  The gravamen of Plaintiff's allegations, then, is not that he was *denied* medical care, but that he did not receive his preferred mode of treatment.

---

[9] Other courts have observed that the "pain associated with a urinary tract infection is arguably sufficiently serious to satisfy the objective element" of an Eighth Amendment claim. *Risch v. Hulihan*, No. 09-CV-00330, 2010 WL 5463339, at *8 (N.D.N.Y. Dec. 29, 2010). Defendants, notably, argue only as to the subjective element of the claim. (*See* Lewit Br. at 6-9; Lewit Reply Br. at 2-4; State Def. Br. at 6-8; *see also* Am. Compl. at 10 (claiming that Plaintiff suffered from "multiple urinary tract infections, weight loss," kidney deterioration, and physical and mental pain)). Given the fact that Plaintiff received treatment, even if the Court assumes the seriousness of the condition in the abstract, he still fails to plead the objective prong because of the treatment he received. (*See* discussion *infra*).

"[D]isagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance*, 143 F.3d at 703; *Casanova v. Maldonado*, No. 17-CV-01466, 2021 WL 3621686, at *7 (S.D.N.Y. Aug. 16, 2021) ("[D]isagreement over treatment cannot be the basis for a claim under the Eighth Amendment."); *see also Dinkins v. New York*, No. 19-CV-08447, 2020 WL 5659554, at *9 (S.D.N.Y. Sept. 23, 2020) ("Plaintiff's demand that he should have been referred for surgery is merely a difference of opinion with respect to a course of treatment, which is not actionable under section 1983." (internal quotation marks omitted)); *Portillo v. Webb*, No. 16-CV-04731, 2017 WL 4570374, at *7 (S.D.N.Y. Oct. 11, 2017) ("[T]his is best characterized as a disagreement as to the method of addressing his inability to walk, and thus not grounds for a section 1983 claim."), *adopted by* 2018 WL 481889 (S.D.N.Y. Jan. 17, 2018); *Kalamaras v. Mangano*, No. 16-CV-00459, 2016 WL 4132254, at *9 (E.D.N.Y. Aug. 2, 2016) ("Although Plaintiffs may disagree with the medical treatment provided, such disagreement does not give rise to a deliberate indifference claim.").

Any claim for deliberate indifference to a serious medical need thus fails at the first prong.

b.   The Subjective Prong

As to the second prong, even if Plaintiff pled the objective element, there is no basis to believe that Lewit, Fullerton, Barrito, or Edge created a substantial risk of harm to Plaintiff. The subjective prong requires that Plaintiff prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). "It is not enough to show that Defendants lacked due care; rather, Plaintiff must establish that the defendants' conduct 'involved obduracy and

wantonness in placing [the plaintiff's] health in danger.'" *Boomer*, 2021 WL 1163658, at *4 (quoting *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (alteration in original)).

With respect to Lewit and Fullerton, Plaintiff complains that he was misdiagnosed. (*Compare* Am. Compl. at 11, *with* Gil Decl. Ex. D at 4). Misdiagnosing a condition is not the same as being deliberately indifferent to it; the claims against those Defendants, therefore, fail on the subjective prong as well. *See Whitfield v. O'Connell*, 402 F. App'x 563, 566 (2d Cir. 2010) ("[E]ven assuming that . . . reports suggested that he might be suffering from a urinary tract infection, any failure . . . to properly diagnose this condition would not constitute deliberate indifference, but rather, at worst, medical malpractice."); *Haynes v. City of New York*, No. 19-CV-01925, 2020 WL 4926178, at *11 (S.D.N.Y. Aug. 20, 2020) ("[A]llegations of negligent misdiagnosis . . . do not suggest that the defendant acted with a conscious disregard to inmate health or safety." (internal quotation marks omitted, first alteration added)); *Lainez v. Roycroft*, No. 18-CV-06754, 2019 WL 4934009, at *3 (S.D.N.Y. Oct. 7, 2019) ("[P]laintiff's complaints lack any allegation that his misdiagnosis was caused by anything other than . . . negligence."); *Snyder v. Alam*, No. 15-CV-04033, 2016 WL 2642226, at *4 (S.D.N.Y. May 6, 2016).

As for Barrito and Edge, Plaintiff says that as soon as he returned to Green Haven, he engaged in a campaign of complaining to "every" nurse in the facility and—approximately forty-eight hours after his return—Barrito and Edge confronted him and told him to stop. (Am. Compl. at 11). While a deliberate indifference claim may proceed against correction officers where they "intentionally deny[] or delay[] access to medical care," *Estelle*, 429 U.S. at 104-05, the allegations do not plausibly suggest such a situation here. In order to conclude that Barrito and Edge were deliberately indifferent to a serious medical need, the Court would have to assume that: (1) Barrito and Edge knew about and understood Plaintiff's request for medical attention; (2) Plaintiff's

request described the seriousness of his condition in a way that put Barrito and Edge on notice that taking no action would risk substantial harm; and (3) the failure to act was reckless, even though Plaintiff had been returned to Green Haven roughly forty-eight hours prior on a physician's orders. Notwithstanding the latitude afforded *pro se* litigants, the Court cannot assume "essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (quoting *Litmon v. Harris*, 768 F.3d 1237, 1241 (9th Cir. 2014)).

Based upon the foregoing, Plaintiff failed to plead facts supporting either prong of a claim under the Eighth Amendment in connection with his medical care. Those claims for relief are, consequently, dismissed.

ii.   Theory No. 2: Excessive Force and Failure to Intervene

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Torres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original)), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the

17

challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63)).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotation marks omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL

1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

The Amended Complaint meets neither element for any associated conduct.

a. Excessive Force and Failure to Intervene (Edge and Barrito)

As to Edge, Plaintiff suggests that—with Barrito as a bystander—Edge grabbed Plaintiff's shirt, slapped Plaintiff, and called Plaintiff "a fuckin' baby rapist." (Am. Compl. at 11-12). Such barebones allegations, reflecting nothing more than the most *de minimis* use of force, without any mention of Edge's mental state or the impetus for the interaction, cannot state a claim for excessive force under the Eighth Amendment against Edge. *See, e.g.*, *George v. Cty. of Westchester*, No. 20-CV-01723, 2021 WL 4392485, at *9 (S.D.N.Y. Sept. 24, 2021) ("[C]omparable uses of force—where a corrections officer forcefully shoves or pushes an inmate—are insufficient to satisfy the objective prong of an excessive force claim."); *Lewis v. Huebner*, No. 17-CV-08101, 2020 WL 1244254, at *6 (S.D.N.Y. Mar. 16, 2020) ("Courts have repeatedly held that a single slap that results in no injury constitutes unactionable, *de minimis* force."); *Banks v. Cty. of Westchester*, 168 F. Supp. 3d 682, 691 (S.D.N.Y. 2016) ("[C]ourts have consistently held that the mere allegation of verbal abuse, however repugnant it may be, does not rise to the level of a constitutional violation . . . ." (internal quotation marks omitted)).

As there is no excessive force claim against Edge, there is, *ipso facto*, no claim against Barrito for failing to intervene in that nonexistent use of force. *Foster v. Donahue*, No. 13-CV-01177, 2020 WL 1855821, at *8 (W.D.N.Y. Apr. 13, 2020) ("To prevail on a failure to intervene claim a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene." (internal quotation marks omitted)).

b.   Excessive Force (Toll)

As to the other excessive force theory—Toll's random use of a fire extinguisher—that claim is likewise dismissed, as the allegations are far too conclusory to state a claim. *See, e.g.*, *Roberts v. Blowers*, No. 21-CV-06187, 2021 WL 1579072, at *3 (W.D.N.Y. Apr. 22, 2021) ("It is the conclusory nature of [Plaintiff]'s allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth." (quoting *Iqbal*, 556 U.S. at 681)); *Terry v. City of New York*, No. 19-CV-09688, 2021 WL 517935, at *4 (S.D.N.Y. Feb. 10, 2021) ("[A] sufficient claim might describe what happened, who was involved, whether any weapons or implements were used . . . [the] injury, how severe it was it, how long it lasted, what if any treatment he received and for how long. Lacking specificity, the claim for excessive force is dismissed.").

iii.   Theory No. 3: Unconstitutional Conditions of Confinement

The Supreme Court has explained that the Eighth Amendment requires that prison officials "provide humane conditions of confinement," which include making sure "that inmates receive adequate food, clothing, shelter, and medical care . . . ." *Farmer*, 511 U.S. 832. In order to state a claim for relief where, as here, relief is based on a theory that "the conditions of . . . confinement constitute cruel and unusual punishment, the plaintiff must satisfy both an objective test and a subjective test." *Jolly v. Coughlin*, 76 F.3d 468, 480 (2d Cir. 1996) (citation omitted).

Under the first step of the analysis, conditions of confinement are objectively serious if the plaintiff can show that "the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). This assessment is not "static," as "[t]he conditions themselves must be evaluated in light of contemporary standards of decency." *Blissett v. Coughlin*, 66 F.3d 531, 537 (2d Cir. 1995). At the motion to dismiss stage, the Court must determine whether the plaintiff's allegations lead to the

plausible inference that the plaintiff was "deprived of their basic human needs—*e.g.*, food, clothing, shelter, medical care, and reasonable safety" or was "exposed to conditions that pose an unreasonable risk of serious damage to [their] future health." *Jabbar v. Fischer*, 683 F.3d 54, 57 (2d Cir. 2012) (alteration in original, internal quotation marks omitted). As for the second step of the analysis, the subjective element, a defendant:

> cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Darnell*, 849 F.3d at 32 (quoting *Farmer*, 511 U.S. at 837); *see also Reyes v. Wenderlich*, 779 F. App'x 55, 56 (2d Cir. 2019) (noting that a plaintiff "must demonstrate that, subjectively, prison staff acted with deliberate indifference . . . in failing to address the purported danger" (internal quotation marks omitted)).

Under this theory of relief, with respect to the objective element, Plaintiff complains that Toll failed to give Plaintiff meals "on numerous occasions" from December 2018 to February 2019. (Am. Compl. at 13). "Depriving an inmate of food . . . may constitute a violation of the Eighth Amendment," *Delgado v. Devlin*, No. 21-CV-00120, 2021 WL 964217, at *7 (N.D.N.Y. Mar. 15, 2021) (quoting *Moncrieffe v. Witbeck*, No. 97-CV-00253, 2000 WL 949457, at *6 (N.D.N.Y. June 29, 2000)), but a viable claim requires identifying "a 'sufficiently serious condition' that resulted from the food not being received.'" *Bryant v. Miller*, No. 18-CV-00494, 2021 WL 5095284, at *27 (N.D.N.Y. July 22, 2021) (quoting *Evans v. Albany Cty. Corr. Facility*, No. 05-CV-01400, 2009 WL 1401645, at *9 (N.D.N.Y. May 14, 2009)). In the deprivation of food context, "[a] condition is serious for constitutional purposes if it presents 'a condition of urgency

that may result in degeneration or extreme pain.'" *Lewis v. Zon*, 920 F. Supp. 2d 379, 387 (W.D.N.Y. 2013) (quoting *Chance*, 143 F.3d at 702).

Plaintiff's claim for relief fails at the objective element because he pleads simply that Toll failed to provide him with unspecified meals for approximately two months; that does not provide a factual predicate to "nudge [Plaintiff's] claim across the line from conceivable to plausible" and "raise a reasonable expectation that discovery will reveal evidence of the wrongdoing alleged . . . ." *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 323 (2d Cir. 2021) (internal quotation marks omitted); *see also Crichlow v. Annucci*, No. 21-CV-00692, 2022 WL 179917, at *19 (N.D.N.Y. Jan. 20, 2022) (dismissing Eighth Amendment claim based on deprivation of food where "the amended complaint fails to allege how many times plaintiff missed meals[,] . . . when the deprivations occurred," or how the deprivations "presented, or resulted in, a danger to his health"); *Zielinski v. Annucci*, No. 17-CV-01042, 2021 WL 2744684, at *8 (N.D.N.Y. July 2, 2021) (granting summary judgment for prison officials and explaining that "sporadic deprivation of food over an extended period of time" does not constitute an Eighth Amendment violation).

Any claim for relief based on this theory is—like every other theory of liability under the Eighth Amendment—dismissed.

### C.  Claims for Relief Under the Fourteenth Amendment

In the next category of claims, Plaintiff alleges that his due process rights were violated when: (1) somebody—presumably Plaintiff, but that fact is not clear—overheard Toll, Carbello, and Quarche "discussing" his (a) "criminal charge" and (b) "mental state;" and (2) Medbury, Griffen, and Morales "forced Plaintiff to sign" a residential treatment facility agreement that prevented him from being released. (Am. Compl. at 13-14). Neither of these theories survive the State Defendants' motion to dismiss.

i.   Theory No. 1: Substantive Due Process

"To state a substantive due process claim, Plaintiff must allege: (1) a valid liberty or property interest, (2) which Defendants infringed in an arbitrary or irrational manner." *Sagaria v. Orange Cty. Jail*, No. 20-CV-02287, 2021 WL 4392422, at *4 (S.D.N.Y. Sept. 24, 2021) (citing *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 503 (2d Cir. 2001)).

a.   Liberty or Property Interest: Confidentiality of Criminal Charges

With respect to any discussion of Plaintiff's criminal charges, he has no cognizable liberty or property interest in the confidentiality of that information; indeed, it is publicly accessible through the DOCCS website and court records.[10] *See Biccum v. City of Watertown, New York*, No. 16-CV-00645, 2019 WL 4752927, at *5 (N.D.N.Y. Sept. 30, 2019) ("Plaintiff's arrest records are a matter of public record, and therefore the detective's disclosure of those records . . . cannot amount to a violation of privacy."); *Thomas v. Pingotti*, No. 17-CV-00300, 2017 WL 3913018, at *8 (N.D.N.Y. Sept. 6, 2017) (concluding—in a case brought by Plaintiff—that "courts have held that the right of confidentiality does not prohibit the disclosure of an individual's criminal history"); *Swift v. Tweddell*, 582 F. Supp. 2d 437, 447-48 (W.D.N.Y. 2008); *see also Swain v. Doe*, No. 04-CV-01020, 2009 WL 3151183, at *7 (D. Conn. Sept. 24, 2009) ("It is well-settled, however, that any constitutional right to privacy does not apply to matters of public record.").

Any substantive due process claim based on this theory is, therefore, dismissed.

---

[10] Notably, Plaintiff provided his Department Identification Number or "DIN" in the materials he provided to the Court. (*See* Am. Compl. at 18, 21). Searching Plaintiff's DIN (13-A-2123) on the DOCCS inmate lookup website reveals that Plaintiff was convicted of Attempted Rape in the First Degree, Sexual Abuse in the First Degree, Attempted Robbery in the Third Degree, and was first received by DOCCS in May 2013. *See Simmonds v. Family Dollar Store*, No. 18-CV-01241, 2018 WL 5447046, at *1 n.1 (E.D.N.Y. Oct. 25, 2018) ("The Court may take judicial notice of Plaintiff's DOCCS inmate lookup information."); *see also Jackson v. Sullivan Cty.*, No. 16-CV-03673, 2018 WL 1582506, at *5 n.8 (S.D.N.Y. Mar. 27, 2018) ("Courts in this district have taken judicial notice of information obtained from online inmate tracking services." (internal quotation marks omitted)); *Rosario v. New York City*, No. 12-CV-04795, 2013 WL 2099254, at *1 n.1 (S.D.N.Y. May 15, 2013).

b.   Liberty or Property Interest: Confidentiality of Mental State

Under the Due Process Clause of the Fourteenth Amendment, courts have recognized "the right to privacy in one's personal information, including information about one's body." *Hancock v. Cty. of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018); *see also Davidson v. City of Bridgeport*, 487 F. App'x 590, 592 (2d Cir. 2012) ("Personal medical information is protected by substantive due process."). "This right to privacy has been characterized as a right to 'confidentiality' and includes a right to keep private the status of one's health." *Rush v. Artuz*, No. 00-CV-03436, 2004 WL 1770064, at *11 (S.D.N.Y. Aug. 6, 2004) (citing *Doe v. City of New York*, 15 F.3d 264, 267 (2d Cir. 1994)); *see also Matson v. Bd. of Educ. of City Sch. Dist. of New York*, 631 F.3d 57, 63 (2d Cir. 2011) (observing that the "right to privacy protect[s] 'the individual interest in avoiding disclosure of personal matters'" (quoting *Doe*, 15 F.3d at 267)). This right includes information about one's mental health. *O'Connor v. Pierson*, 426 F.3d 187, 201 (2d Cir. 2005) ("Medical information in general, and information about a person's psychiatric health and substance-abuse history in particular, is information of the most intimate kind.").

While prisoners are afforded this constitutional right to privacy, *Matson*, 631 F.3d at 64 (citing *Powell v. Schriver*, 175 F.3d 107, 112 (2d Cir. 1999)), the right to keep information about one's health confidential is not absolute, *Hancock*, 882 F.3d at 65; *see also Arroyo v. Does #1-#4*, No. 21-CV-10823, 2022 WL 161478, at *4 (S.D.N.Y. Jan. 18, 2022). To determine if an inmate's substantive due process rights have been violated by the disclosure of medical information, the Court weighs the inmate's interest in the privacy of the information against the government's interest in disclosure of that information. *Hancock*, 882 F.3d at 65. As to the first part of the balancing test, "case law makes clear . . . that 'the interest in the privacy of medical information will vary with the condition.'" *Matson*, 631 F.3d at 64 (quoting *Powell*, 175 F.3d at 111). Thus,

the disclosure of certain medical conditions may implicate the Fourteenth Amendment right to privacy, while disclosure of others may not do so. *Hancock*, 882 F.3d at 67 (finding that the Second Circuit has "repeatedly found that determining the strength of [the privacy] interest requires taking into account the seriousness of the condition and the stigma associated with it"). Only when a medical condition is "excruciatingly private and intimate [in] nature," or "likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others," is disclosure of that condition potentially in violation of an individual's privacy rights. *Powell*, 175 F.3d at 111.

Plaintiff asserts that somebody overheard Toll, Carbello, and Quarche discuss Plaintiff's "mental state" while he "was on suicide watch." (Am. Compl. at 13-14). This statement, on its own, does not plead a substantive due process rights violation. Aside from the fact that Plaintiff does not specify *who* overheard the conversation or *where* it occurred, two separate issues present themselves.

First, Plaintiff does not claim that these individuals disclosed or discussed any *confidential* mental health information; indeed, he complains only that these individuals discussed his "mental state," generally. (*Id*. at 14). Although "information about a person's psychiatric health" qualifies generally as "information of the most intimate kind," *O'Connor*, 426 F.3d at 201, Plaintiff provides no elaboration that would allow the Court to conclude that a "liberty or property interest" was at issue here. Plaintiff has, therefore, failed to plead a cognizable liberty or property interest in the first instance. *See Arroyo*, 2022 WL 161478, at *5 ("Plaintiff's complaint does not include facts about the nature of the medical information that he wished to keep confidential, and the strength of his privacy interest is thus unclear."); *Brooks v. Hogan*, No. 14-CV-00477, 2016 WL 1298137, at *3 (N.D.N.Y. Mar. 31, 2016) ("Plaintiff makes no allegations as to the contents of the disclosed

25

information."); *Davidson v. Desai*, 817 F. Supp. 2d 166, 192 (W.D.N.Y. 2011) ("Plaintiff has not specified which of his medical conditions he alleges was so 'unusual' that the disclosure of information pertaining to such condition arose to a Fourteenth Amendment violation . . . .").

Second, in context, Plaintiff pled that this discussion took place while he was "on suicide watch." (Am. Compl. at 13). Such a backdrop suggests that discussing Plaintiff's mental state was reasonably related to the legitimate penological interest of ensuring his safety and not an arbitrary or irrational infringement. *See Arroyo*, 2022 WL 161478, at *5 ("Plaintiff also does not plead facts about the circumstances under which his medical information was disclosed, and it is therefore unclear if medical personnel had a legitimate purpose for disclosing such information."); *cf. Randolph v. Kalies*, No. 19-CV-01161, 2021 WL 5605557, at *6 (N.D.N.Y. Nov. 10, 2021) (explaining theories of deliberate indifference liability against corrections officials in connection with an inmate's suicidal tendencies), *adopted by* 2021 WL 5596409 (N.D.N.Y. Nov. 30, 2021); *Barnes v. Ross*, 926 F. Supp. 2d 499, 506 (S.D.N.Y. 2013) (dismissing an Eighth Amendment deliberate indifference claim but noting that "[a] propensity to attempt suicide or harm oneself is undoubtedly a serious medical condition" that must be addressed).

In light of the failings outlined *supra*, Plaintiff's substantive due process claim based on the fact that Toll, Carbello, and Quarche discussed his "mental state" is dismissed.

ii.   Theory No. 2: Procedural Due Process

"[T]o present a [procedural] due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Joseph v. Cuomo*, No. 20-CV-03957, 2021 WL 200984, at *6 (E.D.N.Y. Jan. 20, 2021) (quoting *Adams v. Annucci*, No. 17-CV-03794, 2018 WL 4608216, at *6 (S.D.N.Y.

Sept. 25, 2018) (alterations in original)); *see also Velazquez v. Gerbing*, No. 18-CV-08800, 2020 WL 777907, at *9 (S.D.N.Y. Feb. 18, 2020). Plaintiff meets neither element for this claim.

a.   <u>Liberty Interest: Release from Incarceration</u>

The Court considers first the existence of a liberty interest. "[I]n order to have a protectable liberty interest, a prisoner must have more than a hope or a unilateral expectation of release. He must, instead, have a legitimate claim of entitlement to it." *Victory v. Pataki*, 814 F.3d 47, 59 (2d Cir. 2016) (alteration in original, internal quotation marks omitted); *see also Wright v. Guadarrama*, No. 21-CV-00710, 2022 WL 19338, at *3 (D. Conn. Jan. 3, 2022) (dismissing petition for writ of *habeas corpus* and observing, with respect to whether petitioner had a legitimate expectancy of release, that "[t]here cannot be expectancy where there is no certainty"). This expectancy must be "grounded in the state's statutory scheme." *Barna v. Travis*, 239 F.3d 169, 170 (2d Cir. 2001). Here, Plaintiff provides absolutely no factual basis to believe he had a legitimate claim of entitlement to release that was delayed by the execution of the residential treatment facility agreement. (*See* Am. Compl. at 14). The claim, therefore, fails on this basis.

b.   <u>Insufficient Process: Forced to Sign an Agreement</u>

Even if Plaintiff pled a liberty interest, the claim would fail at the second stage because Plaintiff alleges simply that Medbury, Griffen, and Morales "forced [him] to sign" a residential treatment facility agreement. (*Id.*). That statement offers no explanation as to how Plaintiff was "forced" to sign the agreement and constitutes the very type of "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" that the Supreme Court deems unacceptable. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Because Plaintiff pled no facts explaining how he was subjected to insufficient process, the claim for relief fails at the second stage as well. *See, e.g*, *George*, 2021 WL 4392485, at *13 (dismissing procedural due process claim because the

27

plaintiff's "allegations regarding procedural deficiencies are too vague and conclusory to" state a claim for relief); *Meisel v. Westchester Cty.*, No. 18-CV-07202, 2020 WL 3472500, at *7 (S.D.N.Y. June 25, 2020) (dismissing inmate's procedural due process claim where the inmate made only "general, boilerplate allegations" about the process afforded to him).

Plaintiff's procedural due process claim against Medbury, Griffen, and Morales is, accordingly, dismissed.

### D.   Claim for Conspiracy to Violate Plaintiff's Constitutional Rights

The final claim for relief suggests that Medbury, Griffen, and Morales engaged in a conspiracy to keep Plaintiff in Green Haven. (Am. Compl. at 14). To survive a motion to dismiss, Plaintiff must allege facts suggesting plausibly that: (1) an agreement existed between two or more state actors to act in concert to inflict an unconstitutional injury on plaintiff, and (2) an overt act was committed in furtherance of that goal. *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324-25 (2d Cir. 2002); *see also Eldars v. State Univ. of N.Y. at Albany*, No. 20-2693, 2021 WL 4699221, at *3 (2d Cir. Oct. 8, 2021) ("To state a claim for § 1983 conspiracy, a plaintiff must allege (1) an agreement between two or more state actors or between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, causing damages." (citing *Ciambriello*, 292 F.3d at 324-25)).

Plaintiff fails to state this claim for two distinct reasons. First, he fails to offer any nonconclusory facts establishing either the existence of a conspiracy or a meeting of the minds necessary to support such a claim. *See Ortiz v. Ledbetter*, No. 19-CV-02493, 2020 WL 2614771, at *6 (S.D.N.Y. May 22, 2020); *Liner v. Fischer*, No. 11-CV-06711, 2013 WL 4405539, at *6 (S.D.N.Y. Aug. 7, 2013) ("[B]are statements that Defendants 'conspired' are insufficient to state an actionable claim for conspiracy."). Second, this claim is barred by the intracorporate conspiracy

doctrine because Medbury, Griffen, and Morales worked for the same corporate entity (i.e., DOCCS) and were acting within the scope of their employment in connection with the alleged conduct. *See Arriaga v. Otaiza*, No. 20-CV-06992, 2021 WL 5449849, at *10 (S.D.N.Y. Nov. 19, 2021) ("State officials carrying out an agency's business cannot conspire with one another as a matter of law under § 1983." (citing *Herrmann v. Moore*, 576 F.2d 453, 459 (2d Cir. 1977))); *Pajazetovic v. City of Utica, New York*, No. 18-CV-01496, 2021 WL 4440473, at *11 (N.D.N.Y. Sept. 27, 2021) ("Courts in the Second Circuit recognize the 'intracorporate conspiracy doctrine,' which holds that the 'officers, agents, and employees of a single corporate entity are legally incapable of conspiring together.'" (quoting *Peck v. Cty. of Onondaga, New York*, No. 21-CV-00651, 2021 WL 3710546, at *15 (N.D.N.Y. Aug. 20, 2021))); *Little v. City of New York*, 487 F. Supp. 2d 426, 441-42 (S.D.N.Y. 2007) ("Under the 'intracorporate conspiracy' doctrine, the officers, agents, and employees of a single corporate entity, each acting within the scope of her employment, are legally incapable of conspiring together." (quoting *Salgado v. City of New York*, No. 00-CV-03667, 2001 WL 290051, at *8-9 (S.D.N.Y. Mar. 26, 2001))); *Williams v. Fischer*, No. 09-CV-01258, 2011 WL 1812527, at *10 (N.D.N.Y. Feb. 9, 2011) (dismissing conspiracy claim under the intracorporate conspiracy doctrine where all defendants were DOCCS employees), *adopted by* 2011 WL 843919 (N.D.N.Y. Mar. 8, 2011).

Plaintiff's conspiracy claim—the sole remaining claim for relief—is, therefore, dismissed.

III.   Leave to File a Second Amended Complaint

Plaintiff, in response to Lewit's motion, requested in conclusory fashion that he be permitted to file a Second Amended Complaint "to address any deficiencies identified by the Court." (Lewit Opp. at 1). "Plaintiff's request to amend, contained solely in [his] opposition memorandum, is procedurally defective since a bare request to amend a pleading contained in a

brief, which does not also attach the proposed amended pleading[,] is improper under Fed. R. Civ. P. 15." *Tarrant v. City of Mount Vernon*, No. 20-CV-09004, 2021 WL 5647820, at *10 (S.D.N.Y. Dec. 1, 2021) (quoting *Zottola v. Eisai Inc.*, No. 20-CV-02600, 2021 WL 4460563, at *11 (S.D.N.Y. Sept. 29, 2021) (first alteration in original)). Notwithstanding the defective nature of Plaintiff's request, the Court considers it. *Goney v. SuttonPark Cap. LLC*, No. 21-1101, 2021 WL 5071867, at *2 (2d Cir. Nov. 2, 2021) ("We have also explained that the lack of a formal motion is not sufficient ground for a district court's dismissal without leave to amend, so long as the plaintiff has made its willingness to amend clear . . . ." (internal quotation marks omitted)).

The Second Circuit has instructed that "a *pro se* plaintiff 'should be afforded every reasonable opportunity to demonstrate that he has a valid claim.'" *Guerra v. Jones*, 421 F. App'x 15, 17 (2d Cir. 2011) (quoting *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000)). Indeed, "courts generally grant a *pro se* plaintiff leave to amend a complaint to cure its shortcomings, but leave to amend may be denied if the plaintiff has already been given an opportunity to amend but has failed to cure the complaint's deficiencies." *Michel v. Orange Cty., New York*, No. 21-CV-09406, 2022 WL 103581, at *3 (S.D.N.Y. Jan. 11, 2022). "[L]eave to amend, though liberally granted, may properly be denied for undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc." *Vasquez v. Yadali*, No. 16-CV-00895, 2020 WL 6384067, at *1 (S.D.N.Y. Oct. 30, 2020) (quoting *Tapia v. Huaquechula Rest. Corp.*, No. 18-CV-10771, 2020 WL 3893314, at *2 (S.D.N.Y. July 10, 2020) (alteration in original)). Deciding such a motion falls within the Court's discretion. *Forman v. Davis*, 371 U.S. 178, 182 (1962).

In this case, Judge Stanton issued an Order explaining the Complaint's various deficiencies and granting Plaintiff leave to file the Amended Complaint. (Doc. 4). Plaintiff filed the Amended Complaint, but it suffers from many of the same failings outlined by Judge Stanton. (*See generally id.*).[11] At this juncture, given the deficiencies outlined above and Plaintiff's failure to cure the shortcomings outlined by Judge Stanton, Plaintiff's unexplained request to file a Second Amended Complaint is denied. *See, e.g.*, *Altayyar v. Etsy, Inc.*, 731 F. App'x 35, 38 n.4 (2d Cir. 2018) ("When a plaintiff does not advise the district court how the complaint's defects would be cured . . . it is not an abuse of discretion to implicitly deny leave to amend." (internal quotation marks omitted)); *Reed v. Friedman Mgmt. Corp.*, 541 F. App'x 40, 41 (2d Cir. 2013) (explaining that "leave to amend is not necessary when it would be futile"); *Reed v. Hales*, No. 05-CV-06497, 2006 WL 3207661, at *1 (W.D.N.Y. Nov. 3, 2006) (denying the request to file an amended complaint because the application was conclusory and offered no explanation as to how "the underlying facts or circumstances relied upon in seeking leave to amend are a proper subject of relief"); *see also Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended . . . . a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim." (internal quotation marks omitted)).

---

[11] Judge Stanton covered the fundamental failings addressed herein and explained that Plaintiff: (1) failed to plead "facts showing how each individual was personally involved in the events underlying his claims;" (2) pled, in connection with his Eighth Amendment deliberate indifference claim, merely an unactionable "disagreement over proper treatment;" (3) failed to provide factual bases for "allegations of physical assault and being denied food;" and (4) could not proceed with a private claim for relief under the Health Insurance Portability and Accountability Act and, in any event, pled only that "Defendants discussed his mental health status . . . ." (Doc. 4 at 4-9 (internal quotation marks omitted)). Judge Stanton also observed that, to the extent Plaintiff may be challenging his current incarceration, he should proceed by way of "a *habeas corpus* petition under 28 U.S.C. § 2254." (*Id*. at 10).

## <u>CONCLUSION</u>

For the foregoing reasons Defendants' motions to dismiss are GRANTED and Fullerton is DISMISSED under 28 U.S.C. § 1915(e)(2)(B)(ii).

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore *in forma pauperis* status is denied for the purpose of an appeal. *Cf. Coppedge v. United States*, 369 U.S. 438, 444-45 (1962) (holding that an appellant demonstrates good faith when he seeks review of a nonfrivolous issue).

The Clerk of the Court is respectfully directed to terminate the motion sequences pending at Doc. 32, Doc. 33, Doc. 34, and Doc. 52, mail a copy of this Memorandum Opinion and Order to Plaintiff, and close this case.

**SO ORDERED:**

Dated:    White Plains, New York
          February 9, 2022

_____
PHILIP M. HALPERN
United States District Judge

32